Keith D. SCHACHT, Plaintiff–Appellant,

v.

WISCONSIN DEPARTMENT OF CORRECTIONS, et al., Defendants–Appellees.

No. 96–3633.

United States Court of Appeals, Seventh Circuit.

Decided April 16, 1999.

David E. Lasker, Madison, WI, for Plaintiff–Appellant.

Richard Briles Moriarty, Wisconsin Department of Justice, Madison, WI, for Defendants–Appellees.

Before BAUER, CUDAHY, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

This case is about two pounds of butter, two garbage bags, six pens, and a three-ounce tube of toothpaste, but its paltry material basis has not kept it from occasioning the loss of one man's livelihood, the attentions of state and federal trial judges, two separate rounds of intermediate appellate review and even a trip to the Supreme Court. With this opinion, we hope to write the final stanzas of the epic.

**I**

Keith Schacht began his 11–year career with the Wisconsin Department of Corrections in 1982. For more than a decade, he received uniformly favorable performance reviews, but that changed abruptly in January 1993, when he was discharged from the Oakhill Correctional Center ("Oakhill") on charges of stealing from his employer.

As Schacht relates the tale, his problems began with the innocuous fact that he occasionally sold frozen food products, such as pizzas and seafood, from his home. When he could, Schacht also provided his seafood customers with free butter. This largesse

was possible because his daughter, who was responsible for disposing of excess government commodity butter stored in a Green Bay facility, was often able to pass some of the butter along to him. (We do not know why this is so, but as no one has raised any questions about it, we inquire no further into this peripheral aspect of the case.)

On January 20, 1993, Schacht arrived at Oakhill to begin his overnight shift. At that time, according to Schacht, he brought with him two pounds of his daughter's government-issue butter to give to a co-worker, Arden Wilson, who earlier had purchased some frozen seafood. Because Schacht missed Wilson on the way in but planned to see him when his shift ended at 6:00 a.m., he stored the butter in a prison freezer overnight. When he removed it from the freezer, he wrapped it in two prison-issue garbage bags (because the butter would become "sweaty" out of the freezer) and placed it in his backpack as he was leaving.

Unbeknownst to Schacht, Oakhill Warden Catherine Farrey, one of the defendants here, had authorized a search of his belongings after the end of his shift that day. She did so based on a written report she received from Sergeant B.J. Mikkelson, who had passed along his suspicions that Schacht was stealing items such as juice and honey from the prison for his personal use. Following Farrey's orders, defendant Captain Thomas Laliberte stopped Schacht as he was leaving the prison the morning of January 21, 1993 and asked him to empty his backpack. Schacht's union representative accompanied Laliberte.

The ensuing search revealed the two pounds of bagged butter, as well as six pens and a small tube of toothpaste similar to the types of pens and toothpaste in use at Oakhill. Laliberte, believing that all of these items had been stolen from the prison, suspended Schacht without pay pending an investigation of his suspected thefts.

On February 4 and 12, 1993, Schacht attended investigatory interviews run by Laliberte and defendant Randall Hepp, another Oakhill employee. Schacht regarded these interviews as a sham designed solely to build a false case against him. He believed that Laliberte and Hepp harbored animosity toward him because he always acted "by the book" and confronted those of his fellow officers who failed to adhere to official prison policy. This resentment, according to Schacht, was what motivated the set-up over the trivial items in his backpack, which in turn laid the groundwork for Laliberte, Hepp, and other prison officials to prevent him from becoming first-shift officer at Cottage 8, where he worked. The remaining two defendants, Cynthia O'Donnell (security director) and Rita Smick (personnel manager), were allegedly aware of the animosity between Schacht and some of the other officers and failed to inform Warden Farrey of the problem.

By February 17, 1993, prison officials had completed their investigation. They held a pre-disciplinary meeting with Schacht and his union representative at which he was told that the investigation had revealed that he had violated two work rules: theft of state property and failure to provide complete and accurate information during the investigation. He was warned that the disciplinary consequences could include discharge. Schacht declined to make a statement in his own defense. Schacht was in fact discharged the next day at a meeting at which he again declined to make a statement.

Schacht began grievance proceedings through his union, but the union declined to take the case to arbitration. Schacht then commenced this action under 42 U.S.C. § 1983 against all of the defendants in state court, alleging violations of his constitutional rights to substantive and procedural due process. The defendants removed the case to the District Court for the Western District of Wisconsin. That court granted summary judgment for the

defendants in their individual capacities, and it dismissed Schacht's claims against the Wisconsin Department of Corrections and the individual defendants in their official capacities as barred by the Eleventh Amendment.

This appeal, in which Schacht challenges only the summary judgment on the individual capacity claims, followed. Following our earlier decision in *Frances J. v. Wright*, 19 F.3d 337 (7th Cir.1994), we held that we lacked jurisdiction to hear the appeal because a case that included both proper federal claims and claims barred by the Eleventh Amendment could not be removed to federal court. See *Schacht v. Wisconsin Dep't of Corrections*, 116 F.3d 1151 (7th Cir.1997). The state, however, successfully persuaded the Supreme Court to review that holding. In an opinion emphasizing the fact that the Eleventh Amendment gives a state the power to assert an immunity defense, but does not compel it to do so, the Court ruled that a federal court must not raise a potential Eleventh Amendment issue *sua sponte*. It reversed our jurisdictional ruling and remanded the case for further proceedings. *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998). Because the merits of Schacht's appeal were fully developed prior to our first opinion, both in the briefs and at oral argument, we are now ready to reach the merits of the appeal.

## II

■ We review the district court's order granting summary judgment for the defendants *de novo*, viewing the facts in the record and any inferences to be drawn from them in the light most favorable to Schacht, the non-moving party. *Reid v. Norfolk & Western Ry. Co.*, 157 F.3d 1106, 1110 (7th Cir.1998). Summary judgment is appropriate only if the movant demonstrates that no genuine issue of material fact exists which would warrant requiring a judge or jury to make a factual determination, and the movant under that view of the record is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Schacht here raises two related but distinct claims. First, he contends that prison officials engaged in such arbitrary and utterly unreasonable governmental decisionmaking in regard to his property right to his state employment that they violated his rights under the substantive aspect of the Due Process Clause. Second, he alleges that his procedural due process rights were violated when the procedural protections he received before being deprived of his state employment were nothing more than a sham cooked up by conspirators trying to oust him from his job. This, he claims, amounts to no procedural protections at all.

■ As a threshold matter, the defendants argue that Schacht has waived any substantive due process claim by failing to argue the point to the district court. It is true that Schacht's complaint, as well as his brief in opposition to the defendants' motions, does not clearly identify the exact due process theory he is pressing. Nonetheless, the district court was willing to assume that Schacht was presenting, however inartfully, both substantive and procedural due process claims, and it proceeded to discuss each. We insist that an appellant have presented her argument to the trial court to be certain that the court below has had the first opportunity to consider and pass on the appellant's theory. *United States v. Payne*, 102 F.3d 289, 293 (7th Cir.1996). Because the trial court discussed Schacht's substantive due process claim and it has been fully briefed here, we are satisfied that we too should address it on the merits.

■ Our willingness to consider this argument will be of only fleeting comfort to Schacht, however, because we find his substantive due process claim to be fatally flawed on several fronts. This follows from two of the Supreme Court's most

recent decisions that considered substantive due process arguments, *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), and *Washington v. Glucksberg*, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). As we explained in our own decision in *Dunn v. Fairfield Community High School Dist. No. 225*, 158 F.3d 962 (7th Cir.1998), substantive due process does not come into play when a particular part of the Constitution "provides an explicit textual source of constitutional protection against a particular sort of government behavior," *id.* at 965, quoting *Lewis*, 118 S.Ct. at 1714, 118 S.Ct. 1708. In addition, an executive abuse of power violates substantive due process rights only if the executive action is so egregious as to shock the conscience. *Dunn*, 158 F.3d at 965.

We are willing to assume for the sake of argument that no particular part of the Constitution (apart from the procedural side of the Due Process Clause, to which we turn in a moment) offers explicit textual protection against a sham set of procedures used to deprive someone of a protected property interest. We also note that no one has argued that Schacht did not have a protectible interest in his job at Oakhill, although this is not the same thing as conceding that an interest in a particular job rises to the level of a fundamental right. No Supreme Court decision has ever gone that far, and to the extent this is an independent component of a substantive due process claim, the lack of a fundamental right to a particular job would be enough in itself to doom this aspect of Schacht's case. In any event, because his claim relates to a particular form of alleged abuse at the hands of executive officials of the State of Wisconsin, *Lewis* holds that he must show that their actions were so outrageous as to shock the conscience. 523 U.S. at ——, 118 S.Ct. at 1717. (He is not claiming that legislation or regulations violated his substantive due process rights, as one might with respect to an assisted suicide law, see *Glucksberg, supra,* or laws imposing undue burdens on abortions, see *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).)

No one is saying that sham procedures, or venal motives for pushing someone out of a job, amount to admirable behavior on the part of those who use them. On the other hand, workplace jealousies are unfortunately not unknown. Schacht's own theory explaining why the Oakhill officials suddenly pushed him out the door after so many years of exemplary service describes no more than this. We acknowledge that a formula that requires the conscience to be shocked is necessarily somewhat subjective for the judges who must apply it, but we are confident that even if everything Schacht says and suspects is true, his experience did not rise to that level. We therefore find that the district court correctly granted summary judgment for the defendants on this part of his claim.

■ In fact, as we hinted above, Schacht's complaints about the procedures by which he was first suspended and then fired fit comfortably within the procedural side of the Due Process Clause. One of the most basic guarantees of fair procedure is an unbiased decisionmaker. *E.g., Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50, 70 S.Ct. 445, 94 L.Ed. 616 (1950). This does not necessarily mean a decisionmaker who knows nothing of the facts, especially at the early informal stages of progressive discipline, see *Harrison v. City of Greenfield*, 966 F.2d 315, 317 (7th Cir.1992) (regarding short-term suspension, uninvolved decisionmaker not required where employee receives opportunity to answer charges), but it does imply honesty in the process. *Cf. Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). The actions of which Schacht complains therefore fall squarely within our established procedural due process jurisprudence. See, *e.g., Doe v. Board of Educ. of Oak Park & River Forest High Sch.*

*Dist. 200,* 115 F.3d 1273, 1283 (7th Cir. 1997); *Ciechon v. City of Chicago,* 686 F.2d 511, 517 (7th Cir.1982).

■■ Schacht's procedural due process claim fails in the end because it lacks an adequate basis in fact, and because, even if he could prove his claim, he had adequate post-termination administrative remedies he could have pursued. Before one may be deprived of a constitutionally protected property interest in one's public employment, which both parties agree is present here, due process requires that a pre-termination hearing be held. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The required scope of that hearing depends on the other pre- and post-termination procedures available to the employee, but where, as here, there is the opportunity for full administrative review once a termination decision has been reached, the pre-termination hearing can be somewhat truncated. *Id.* at 545, 105 S.Ct. 1487. It need only "be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. 1487. Its essential features consist simply of the due process staples: notice and an opportunity to respond to the charges. *Id.*; see also *Chaney v. Suburban Bus Div. of the Regional Transp. Auth.,* 52 F.3d 623, 629–30 (7th Cir.1995); *Panozzo v. Rhoads,* 905 F.2d 135, 138 (7th Cir.1990).

There can be no question that the pre-termination interview conducted on February 17, 1993 meets this threshold requirement. Prison officials gave Schacht notice of the charges and asked him if he would like to respond. That he offered no comment cannot defeat the fact that a procedure for responding was placed at his disposal. Indeed, Oakhill personnel appear to have exceeded the constitutional minima when they also conducted two other investigatory interviews and held a separate termination meeting at which Schacht was again given the opportunity to make a statement.

■ Furthermore, Schacht had adequate posttermination remedies under Wisconsin law because he could have pursued reinstatement, back pay, attorneys' fees, and costs through the Wisconsin Personnel Commission by alleging that his discharge was not based on just cause. Wis. Stat. §§ 230.44, 230.45. At oral argument, Schacht's attorney protested that this array of state law remedies was inadequate to the extent that it did not encompass the right to a jury trial or the potential for punitive damages. But he could point to no case holding that administrative remedies are *per se* inadequate in this context, and we are aware of none. *Cf. Mathews v. Eldridge,* 424 U.S. 319, 333–34, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Nor could Schacht argue that the internal bias he perceived in Oakhill's handling of his case would also have tainted proceedings before the Personnel Commission. The availability of administrative remedies at the hands of an unbiased decisionmaker dooms his procedural due process claim.

■ Schacht also confronts an evidentiary deficit that would defeat his claims even if a neutral administrative tribunal had not been available. He does not dispute that the pre-termination meetings occurred. He claims instead that there was far less there than met the eye. All of these technically compliant procedures were, he asserts, the product of a conspiracy to discharge him on trumped up charges. We agree that sham procedures do not satisfy due process and that, for purposes of something like Rule 12(b)(6), Schacht stated a claim. "No matter how complete the panoply of procedural devices which protect a particular liberty or property interest, due process also requires that those procedures be neutrally applied." *Ciechon,* 686 F.2d at 517.

Nevertheless, this case comes to us after a grant of summary judgment.

Roughly speaking, this is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. More formally, it was up to Schacht to present record evidence sufficient to create a genuine dispute of material fact that the defendants indeed conspired against him and used the pre-termination procedures as a vehicle for achieving their illicit goals.

■ This he has failed to do. He has offered only his own self-serving affidavit and the partially confirmatory affidavit of Lois Bangs–Schacht, a fellow Oakhill employee and his wife. Schacht's affidavit purports to attest that Oakhill followed sham procedures and to describe the motivations and beliefs of Oakhill personnel at the time they were investigating him, but he does not supply any independent record evidence to support these allegations. The affidavit of Lois Bangs–Schacht cannot serve as independent record evidence, for she signs onto the majority of Schacht's conclusory affidavit by paragraph number without providing any basis for us to infer her personal knowledge of the material facts to which she seeks to attest, such as—crucially—the motivations of the investigating officials. These kinds of affidavits are not competent to create a genuine issue of material fact at summary judgment. *Joseph P. Caulfield & Assoc., Inc. v. Litho Prods., Inc.*, 155 F.3d 883, 888 (7th Cir.1998); see also *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir.1998) (" '[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment,' " quoting *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir.1993)). Without a factual basis to support his allegations of a denial of procedural due process, Schacht could not prevent summary judgment on this basis either.

■ Before closing, we wish to observe once again that federal courts cannot, and should not, be in the personnel management business. At this remove, we con-

fess that the penalty for taking a few garbage bags, pens, and a tiny three-ounce tube of toothpaste seems quite harsh, especially if we take Schacht's word for his ownership of the two pounds of butter. But the Due Process Clause does not protect people against ill-considered decisions (which this may or may not have been, of course), any more than it protects the right of students to play whatever music they choose in band. See *Dunn, supra.* Because Schacht has not brought a claim falling within the narrow confines of the substantive due process doctrine, and because he cannot support his allegations of a breakdown in procedural protections, we AFFIRM the district court's grant of summary judgment to the defendants on both claims.