Debra K. **HANSON, Plaintiff,**

v.

**THE SPORTS AUTHORITY,**
**Defendant.**

No. 02–C–0385–C.

United States District Court,
W.D. Wisconsin.

March 11, 2003.

Sally A. Stix, Madison, WI, for Plaintiff.

Richard L. Bolton, Boardman, Suhr, Curry & Field, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil case for injunctive and declaratory relief and money damages. Plaintiff Debra K. Hanson contends that defendant The Sports Authority violated her rights under both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e–17, by discriminating against her on the basis of her sex and her pregnancy, and the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654, by refusing to restore her to her former job after she had taken leave under the act. (Plaintiff has stipulated to the dismissal of the claim she alleged originally under the Equal Pay Act and any claim based on the denial of a promotion under Title VII.) Defendant denies any violation of either act and denies specifically that it discrimi-nated against plaintiff on the basis of her sex or pregnancy.

The case is before the court on defendant's motion for summary judgment. I conclude that the motion must be granted. Plaintiff has failed to adduce any evidence sufficient to persuade a jury that she was the victim of illegal discrimination or that defendant violated the Family and Medical Leave Act when it did not offer her work when she wanted it.

From the facts proposed by the parties, I find that the following are material and not disputed. (Because counsel are likely to be filing similar motions in the future, I will take this opportunity to remind them that they do not need to repeat their proposed facts in their brief but that if they do, their references should be to their proposed findings and not to the record. This is not only helpful to the court when it reviews the accuracy of the proposed facts but acts as a check for counsel, who might otherwise rely on "facts" they have never proposed in compliance with the court's procedure. Also, I will remind counsel that the court's procedures give the moving party opportunity to file and serve replies to the non-moving party's responses to the movant's proposed findings of fact.)

## UNDISPUTED FACTS

Plaintiff Debra K. Hanson is a female resident of Wisconsin. She started working for defendant The Sports Authority in 1998 as a part-time cashier. She quit this position voluntarily but returned to work in 1999 as a sales manager at defendant's store in Madison, Wisconsin. The chain of authority at defendant's stores is store manager, sales manager and merchandise manager, in descending order.

In 2000, plaintiff became pregnant, with a due date of February 15, 2001. In September 2000, she began experiencing com-

plications with her pregnancy and was told by her doctor to stay home from work from September 14 until September 18. On September 13, plaintiff told store manager Mary Olson that she would need to stay home until the 18th, but that she expected she would return to work and would continue to work throughout her pregnancy. Plaintiff discussed with Olson the possibility of taking leave under the FMLA but plaintiff found this possibility undesirable because the leave would be unpaid. As an alternative, the two discussed plaintiff's resigning as sales manager and working part-time during her pregnancy, so as to preserve an income stream. (All management positions at defendant's stores are full-time positions.)

Before plaintiff met with Olson, she had prepared a letter stating that she was resigning her management position. The letter read as follows:

September 14, 2000

Mary,

This letter is to inform you that I'm resigning from my current position as Sales Manager, effective Friday, September 29, 2000.

Due to complications with my pregnancy, this position is not working out for me at this time. I hope that you will understand, *as you always do.* I would like to stay on board at The Sports Authority, possibly working a part-time position in the Lower Office in combination with Apparel. In the future, I would consider taking on a management position, but at this time I need to do what is right for myself and my family.

I appreciate everything that you have done to guide me into my current position and I'm glad that I had the opportunity to work side by side with you. You are a great partner and friend! Thank-you for everything that you have done.

Sincerely,

Deb

(Emphasis in original.)

Although plaintiff dated the letter September 14, she wrote it on September 13 and gave it to Olson that same day. When she wrote the letter, she did not know that she was going to be unable to work during the remaining term of her pregnancy. Although plaintiff had offered to give two weeks' notice, she and Olson agreed, with no objection from plaintiff, that the resignation would become effective that day. Defendant's store managers have authority to accept employee resignations without obtaining approval from corporate headquarters. To fill plaintiff's position, Olson promoted Greg Francis from his position as merchandise manager on September 17, 2000.

Meanwhile, plaintiff remained off work for the week, intending to work part-time thereafter. As of September 18, however, her situation had not improved and she was placed on modified bed rest for the duration of her pregnancy. At about the same time, plaintiff called defendant's Benefits Specialist in the Human Resources Department, Tammy Rodriguez. Plaintiff told Rodriguez that her doctor had placed her on full medical leave as a result of the complications of her pregnancy and she wanted information about defendant's short-term disability insurance coverage. Rodriguez said that FMLA could apply for part of the period of time and explained defendant's short-term disability benefits and requirements. Rodriguez told plaintiff she would need to submit an application for the benefits and would need medical verification of the need for medical leave. (The parties dispute whether plaintiff told Rodriguez that plaintiff had resigned her managerial position with defendant.)

Defendant provides disability benefits for its employees through Metropolitan

Life Insurance Company, which makes the eligibility determinations. The Metropolitan policy defines "full disability" to mean "that because of a sickness or any injury you cannot do your job."

Rodriguez called plaintiff and told her she could be eligible for disability benefits for up to six months. Rodriguez told plaintiff that her FMLA leave did not extend beyond twelve weeks, but she would still be deemed an employee for disability benefit purposes even after the expiration of the leave. Rodriguez wrote to plaintiff on September 21, confirming the information she had given plaintiff about her FMLA and short-term disability benefits and reiterating her statement that her FMLA leave would end on December 6, 2000. Rodriguez advised plaintiff in the letter that if the circumstances of her leave changed and she was able to return to work earlier, she was required to notify defendant and provide two days' notice before she returned to work. In addition, plaintiff was to provide a medical certification of fitness to return to work before she returned. Rodriguez added that "failure to comply, by you or your physician, with *any* provision of the disability policies will result in suspension of pay and failure to comply with any of the FMLA provisions may result in termination of your employment." Rodriguez Aff., dkt. # 11, Exh. C. The FMLA requirements described in the letter are standard for defendant's employees that take FMLA leave and are included in the letters that defendant sends its employees who are taking such leave or receiving short-term disability benefits.

After sending plaintiff the September 21 letter, Rodriguez spoke to store manager Olson, who told Rodriguez that plaintiff had been a sales manager but had resigned her position. Rodriguez talked with her superiors to determine whether plaintiff's resignation would affect her eligibility for disability benefits. Although there was confusion about plaintiff's exact status, that is, whether she had resigned entirely or remained a part-time employee, defendant decided that she had resigned only her managerial position but not her entire employment and would be eligible for disability benefits. Defendant decided also that because plaintiff had not received a pay check in a non-managerial position, her last pay check as sales manager would serve as her base rate for her benefits. For this reason, plaintiff showed up in defendant's records as a sales manager until January 4, 2001. On October 2, 2000, Rodriguez received and filed a copy of plaintiff's certification of disability, verifying her need for a medical leave from September 2000 to March 30, 2001.

Plaintiff's baby was born 14 weeks prematurely, by caesarean section, on November 9, 2000. The baby remained hospitalized from his birth until February 4, 2001, but plaintiff was able to resume her normal, everyday functions within days of the baby's arrival. She visited the baby at the hospital for about two hours a day, at whatever times she felt like doing so.

Because Metropolitan Life pays disability benefits only for an employee's own physical condition, it advised plaintiff that she could receive up to eight weeks of disability benefits following the caesarean delivery but that if her condition required an extension beyond that date, she would have to submit substantial proof of disabling complications. In other words, benefits would extend only until January 3, 2001, absent proof of further disabling complications.

Plaintiff knew something of defendant's disability requirements as a result of her work as sales manager but she was not completely familiar with defendant's benefit or leave policies. After her pregnancy complications began, she reviewed the employee handbook and called corporate

headquarters to get her questions answered. She understood that she was eligible for short-term disability benefits only if she herself had a serious medical condition.

Plaintiff did not notify either defendant or Metropolitan Life that her doctors had released her to return to work before January 3, 2001, but continued to accept disability benefit payments as if she were fully disabled for the full eight weeks following the delivery of her child. It is plaintiff's belief that she was entitled to eight weeks of maternity leave benefits after the birth by caesarean delivery.

Plaintiff visited the store when she had worked on December 6, the day her FMLA leave ended. She spoke with Greg Francis, who had replaced Mary Olson as store manager, about the availability of work and about the availability of management positions. She did not say that she was ready to return to work that day and she did not present a medical certification authorizing her return to work. Francis told her that he needed to inquire about the availability of work for plaintiff if she returned to work. Plaintiff told him she had no problems with his doing so.

Francis checked with Benefits Specialist Rodriguez, who advised him that he had no obligation to restore plaintiff to employment because she was not seeking to return to work immediately upon the expiration of her FMLA leave and also because she had not provided the required medical authorization to return to work. Relying on the information from Rodriguez, Francis told plaintiff that she would remain listed as an employee until the expiration of her short-term disability benefits on January 3, 2001, after which her employment would terminate.

Plaintiff did not look for a full-time job after her disability benefits expired on January 3, 2001. She took a part-time job at F & M bank, beginning January 24,

2001, and decided to keep it when her son was released from the hospital on February 5, 2001. Initially, she worked 13 hours a week at $8.50 an hour; later the bank reduced her hours to approximately nine a week at $13.98 an hour. Plaintiff has not had full-time work since she left defendant.

## OPINION

### A. Title VII Claims of Sex and Pregnancy Discrimination

Plaintiff brings her sex and pregnancy discrimination claims under Title VII of the Civil Rights Act, as amended. This statute prohibits discrimination on the basis of sex, which includes pregnancy. 42 U.S.C. § 2000e(k) ("women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . .").

A plaintiff may proceed to trial under Title VII if she can show by means of the direct method of proof that defendant engaged in illegal discrimination or if she can show discrimination indirectly by establishing a prima facie case of discrimination under a variant of the test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Ordinarily, in sex discrimination cases, the test requires the plaintiff to show that she was female, she was meeting her employer's expectations, she was subjected to an adverse employment action and male employees in the same situation were not subjected to such adverse actions. *See King v. Preferred Technical Group*, 166 F.3d 887, 892–93 (7th Cir.1999) (plaintiff alleging retaliatory discharge under FMLA can use burden-shifting framework of *McDonnell Douglas* as indirect evidence of discrimination).

■ Plaintiff has failed to adduce sufficient evidence to allow a jury to find in her favor under either the direct method or the *McDonnell Douglas* method. Under the direct method of proof, a plaintiff must show either an acknowledgment of discriminatory intent by the defendant, *Lim v. Trustees of Indiana Univ.*, 297 F.3d 575, 580 (7th Cir.2002) ("[D]irect evidence should prove the particular fact in question without reliance upon inference or presumption.") (internal citation omitted), or circumstantial evidence that provides the basis for an inference of intentional discrimination. *Troupe v. May Department Stores*, 20 F.3d 734, 736 (7th Cir.1994). Circumstantial evidence can be (1) "suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected groups and other bits and pieces from which an inference of discriminatory treatment might be drawn"; (2) evidence that similarly situated employees were treated differently; or (3) evidence that the employer's reason for the difference in treatments is a pretext for discrimination. *Id.*

■ Plaintiff's evidence under the direct method consists of her deposition testimony that she had the "feeling" that Greg Francis bore her ill will and was out to get her. Plt.'s Dep. at 100–01 (Exh. A to Aff. of Richard Bolton, dkt. # 15.) However, she cannot point to any discriminatory statement Francis made or to any adverse action he took against her, other than the ultimate one of notifying her of the termination of her employment. Even if plaintiff could prove her "feeling" that Francis disliked her, dislike of a female employee does not equal discrimination based on sex or pregnancy. The law does not require supervisors to like their employees, only to avoid treating them differently because of their sex or any other protected characteristic.

■ Plaintiff argues that an inference of bias could be drawn from the confusion regarding her employment status and the "negative attitude" of the emails circulating at corporate headquarters. As an example, she cites an email from Amy Cardarelli, Benefits Manager, to the effect that defendant should not pay plaintiff but wait to see whether she returned her FMLA and Salary Continuation paperwork before deciding whether to terminate her. No reasonable jury could find evidence of sex or pregnancy discrimination from this one email or even from several directed to the question of plaintiff's employment status. This is particularly true in light of the reasonable confusion arising out of the sequence of events: a resignation followed by a request for FMLA leave and short-term disability benefits.

Because plaintiff cannot succeed under the direct method of proof, her only option is to utilize the *McDonnell Douglas* test. She meets the first and third parts easily. She is both female and pregnant and defendant refused to restore her to the job she had held and terminated her employment altogether. The second factor raises an interesting question: Does plaintiff have to show only that she was meeting her employer's expectations when she last worked, or, because of the unusual nature of the case, does she have to show that she was both medically certified to work in her old position and willing to do so on a full-time basis as of December 6, 2000, before she can show that she was meeting her employer's expectations? I am persuaded that she need make only the former showing. Her claim is that defendant treated male employees who took FMLA leave more favorably than pregnant employees who took the same leave. Because defendant does not deny that plaintiff was meeting its expectations when she last worked, the focus should be on the fourth part of the test, where plaintiff is required to

show that similarly situated male employees were treated more favorably than she was. If she can show that male employees (or non-pregnant female employees) were restored to their former positions in circumstances similar to hers, then she can make out a prima facie case. This would require her to show that defendant had restored these employees to their positions although they had not advised defendant that they were ready to return to work when their leave expired; they had taken leave because of medical conditions rendering them unable to work; and they had not produced certification of their medical clearance to return to work.

█ Plaintiff has no evidence that any other employee, male or female, has been restored to a former position in the same circumstances as hers. She alleges that defendant's summary of employee FMLA leave, *see* Aff. of Hugo Balda, dkt. # 13, Exh. A, illustrates a pattern of discrimination because it shows that three female employees (including plaintiff) were terminated after taking more than 12 weeks' leave for maternity or pregnancy reasons, but that no male employees were terminated after taking more than 12 weeks' leave. Unfortunately for plaintiff, the summary does not show why the other two female employees were terminated, that is, whether defendant terminated them or whether they chose to leave on their own. If it was their choice to move out of the area, to take other employment or to stay home with their children, they would drop out of the equation entirely. The summary is deficient also in not including any information about the circumstances of the one male employee who took more than 12 weeks' leave or about the female employee who took almost seven months of leave for depression. Without additional information to flesh it out, the summary does not help plaintiff show any differential in treatment between male and female employees.

It is noteworthy that although plaintiff has been litigating this case in this court for eight months and in other venues before then, she has adduced no evidence of any disparate treatment of male and female employees with respect to FMLA leave and is forced to rely upon an uninformative summary filed by defendant. This lack of evidence dooms her challenge to defendant's motion for summary judgment. She has missed the " 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dept. of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

█ As a alternative way of meeting the fourth factor of the *McDonnell Douglas* test, plaintiff alleges that in December 2000, when she asked about work, a managerial position was open at the Madison store and that Francis filled it with a male employee two and one-half weeks later. If plaintiff had been ready to return to work on December 6 and medically certified to do so, her allegation might make a facial showing of discrimination. As it is, however, the allegation is essentially meaningless. Making a prima facie chase of illegal discrimination under *McDonnell Douglas* requires a showing that plaintiff was treated differently from an employee not in the protected class who was otherwise situated similarly to plaintiff. In this instance, plaintiff has not adduced any evidence to show that she and the male employee Francis hired were similarly situated, such as showing that the male employee had been out on leave before he was promoted and had not been required to establish his physical ability to work upon his return. In other words, the showing is essentially the same one plaintiff would have to make to show that defendant treated pregnant female employees who took FMLA leave

differently from the way it treated male and non-pregnant employees who took the same leave.

### B. *Family and Medical Leave Act Claim*

Congress enacted the FMLA in 1993 to balance "the demands of the workplace with the needs of families," among other purposes. Employees are eligible for up to 12 weeks of unpaid leave in any 12–month period if they are employed by an employer who meets the statutory criteria of "employer" in 29 U.S.C. § 2611 and they have been employed by that employer for at least 12 months preceding their request for leave. (The parties do not dispute that plaintiff was an eligible employee when she took leave in 2000 or that defendant is a covered employer under § 2611.) The leave is available to employees who are providing care for a newly born or adopted child or for a family member who has a serious health condition or because they themselves have a serious health condition that disables them from performing the functions of their job. 29 U.S.C. § 2612. Employees can take leave intermittently or on a reduced schedule "when medically necessary" for their own serious health conditions or to provide care for seriously ill relatives and they can take such leave to care for a new child if their employer agrees. *Id.*

Employees who take FMLA leave are entitled to be restored to the same position or an equivalent one when they return to work. 29 U.S.C. § 2614(a). Employers may require that requests for leave be supported by the certification of a health care provider and may require recertifications on a reasonable basis, 29 U.S.C. § 2613(b) and (e). In addition, an employer may condition restoration to a job on the employee's providing certification from his or her health care provider, so long as the employer's requirement is a uniform practice or policy applied to all employees. § 2614(a)(4).

Plaintiff has alleged that defendant violated the FMLA by refusing to restore her to her former position as sales manager in December 2000 and in terminating her after her short-term disability benefits stopped in January 2001. She starts off with a handicap in trying to prove that defendant violated the act by not restoring her to her former position. The act requires restoration "to the position of employment held by the employee when the leave commenced." § 2614(a)(1)(A). When her FMLA leave began, plaintiff did not hold a managerial position with defendant. She had resigned that position about a week earlier (on September 13, 2000), in the belief that it would benefit her family and her expected baby if she stopped working full-time.

Plaintiff seeks to avoid the implications of her decision to resign by arguing, first, that she made the decision only because Mary Olson "interfered" with her rights under the act and second, that defendant effectively rescinded her resignation by keeping her on its records as a manager throughout her leave. (The FMLA prohibits interference by an employer with any right provided under the act. 29 U.S.C. § 2615(a)(1).) Her first argument has no support in fact or law; her second is incrementally stronger but equally unsuccessful.

The only interference that plaintiff alleges is Olson's failure to tell plaintiff about the availability of intermittent leave under the FMLA when plaintiff talked with her on September 13. Plaintiff does not allege that Olson prevented plaintiff from calling defendant's corporate headquarters for information from benefits specialists. She does not allege that defendant's specialists withheld the information she was seeking or gave her inaccurate

information. Most important, she does not deny that she made the decision to resign before she even met with Olson or called defendant's headquarters. Nonetheless, she argues against all reason that Olson's failure to tell her about the option of intermittent leave was the sole reason for her resignation. Not only had plaintiff reached the decision to resign before she talked to Olson but she knew that Olson was not a benefits specialist and that neither Olson nor anyone else forced her to make a decision before she had talked to a benefits specialist. Moreover, she does not explain why knowledge about intermittent leave would have changed her decision to resign. At the time she submitted her resignation, she was not aware that she would be medically unable to work during her pregnancy, whether intermittently or full-time. She was basing her decision on other factors.

In arguing that her resignation never took effect, plaintiff relies on her deposition testimony that Rodriguez told her the resignation was not effective because it was not made on the correct form and on an email exchange between John Kalgren and Tammy Rodriguez in which Kalgren asked why plaintiff's name was still showing up on the payroll for defendant's Madison store. Defendant denies that Rodriguez made the statements plaintiff attributed to her and maintains that at the time of the conversation, plaintiff did not tell Rodriguez about the resignation and Rodriguez know nothing about it. For the purpose of deciding this motion, I will not resolve this factual dispute but will assume that plaintiff's version of the conversation is accurate.

Once plaintiff used up her FMLA leave, her employer's obligation was to restore her to her former position (assuming as I am that her resignation had never taken effect); her obligation was to show up for work with her doctor's certification that she was physically capable of performing her duties as a full-time sales manager. Plaintiff did not show up for work at the expiration of her FMLA leave on December 6, 2000. Instead, she merely stopped at the store to talk with the manager about work opportunities in the future. She never produced a certification of her physical readiness to return to work. (Not only did plaintiff fail to provide a medical certification, as required under defendant's leave policy, she continued her disability leave, thereby giving defendant strong reason to believe that she was unable to perform her former job.) Plaintiff's failure to report for work with the required certification meant that defendant could terminate her. 29 C.F.R. § 825.311(c) (if, at time employee's FMLA leave concludes, employee fails to provide employer either certification of her ability to resume work or new medical certification for a serious health condition, "the employee may be terminated.").

Plaintiff argues that defendant cannot refuse to restore her to her former position simply because she failed to present a medical certification on the day her leave ended. Rather, she argues, her failure can only delay her return to work. In support of this argument, she quotes Rodriguez's September 21 letter to her in which Rodriguez said nothing about plaintiff's losing her job restoration rights if she failed to provide a medical certification but told her only that her return to work might be delayed until she had provided one.

Not only is plaintiff's argument foreclosed by § 825.311(c), it has neither facts nor logic to support it. Plaintiff did not propose as fact that she was physically capable of performing her former position as of December 6, 2000, or that she obtained a medical certification promptly after December 6. According to her reasoning, an employee could keep her job restoration rights open indefinitely until she chose to

secure medical approval for her return to work. Such an approach would distort the careful balance between employer and employee rights that Congress hoped to achieve when it enacted the FMLA, as the drafters of the regulations realized in writing § 825.311(c).

(Plaintiff does not argue that after her baby was born, her FMLA leave changed from leave taken for her own serious health condition to leave taken to provide care for a new child so that she had no obligation to provide medical certification of her ability to resume her former position. It may be that she realizes such an argument would be equivalent to a concession that she had exhausted her entitlement to short-term disability benefits well before Metropolitan stopped paying those benefits.)

Defendant seems to be raising another issue: plaintiff's alleged misuse of her FMLA leave. It is not clear what defendant's reason is for doing so. Defendant seems to be contending that it had a right to terminate plaintiff because she lost the protections of the FMLA when she continued her leave after her need for it had evaporated, although defendant does not allege that it relied on this alleged misuse when it terminated plaintiff. Alternatively, defendant's point may be that the alleged misuse is a reason to deny damages to plaintiff and that it shows that defendant did not trick plaintiff into thinking that her FMLA leave would extend as long as her short-term disability benefits were paid to her. Whatever defendant's purpose, I decline to reach this issue because it is unnecessary to the resolution of the motion for summary judgment.

Having reached the conclusion that plaintiff has not adduced sufficient evidence to persuade a jury that defendant violated her rights under Title VII or the Family Medical and Leave Act, I need not reach any of defendant's arguments on damages, including its argument that damages are capped as of the day that plaintiff refused defendant's offer of employment.

## ORDER

IT IS ORDERED that the motion of defendant The Sports Authority for summary judgment is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.