**David COCROFT and Veynelcia Cocroft, Plaintiffs–Appellants,**

v.

**HSBC BANK USA, N.A., as Trustee of the Deutsche ALT–A Mortgage Loan Trust Series 2007–OA3; Mortgage Electronic Registration Services, Inc.; and Bank of America, N.A., as Successor in Interest to Countrywide Bank, FSB, and as Successor by Merger to BAC Home Loan Servicing, LP, Defendants–Appellees.**

No. 14–1640.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 2014.

Decided July 31, 2015.

Sabrina Herrell, Attorney, Logik Legal LLC, Chicago, IL, for Plaintiff–Appellant.

Steven R. Smith, Attorney, James Leighton O'Connell–Miller, Attorney, Bryan Cave LLP, Chicago, IL, for Defendant–Appellee.

Before BAUER, KANNE, and HAMILTON, Circuit Judges.

KANNE, Circuit Judge.

David and Veynelcia Cocroft, husband and wife, acquired a home in Country Club Hills, Illinois. In 2007, they refinanced their mortgage on the home. As part of the refinancing transaction, the Cocrofts' mortgage and loan were pooled into a mortgage loan trust. Approximately one year later, the Cocrofts permanently ceased making payments on the loan, and the the trust eventually initiated a foreclosure action against them. The Cocrofts raised a variety of claims against Appellees Mortgage Electronic Registration Systems, Inc. ("MERS"), Bank of America, N.A. ("Bank of America"), BAC Home Loans Servicing ("BACHLS" or the "loan servicer"), and HSBC Bank USA, N.A. ("HSBC Bank"). The district court granted summary judgment for Appellees on all claims. We affirm.

## I. BACKGROUND

### A. Factual History

In March 2006, the Cocrofts acquired the subject property in Country Club Hills, Illinois. On April 17, 2007, the Cocrofts refinanced their mortgage on the home by obtaining a loan in the amount of $386,750.00 from Countrywide Bank, FSB ("Countrywide"). As a part of this transaction, the Cocrofts granted a mortgage to MERS, which was acting solely as nominee for Countrywide. Ultimately, Bank of America became a successor in interest to Countrywide. BAC Home Loans Servicing, a Bank of America affiliate, took over servicing of the loan. The evidence suggests that it remained the servicer during the relevant period to this dispute.

The note and the mortgage were pooled into a trust, pursuant to a pooling and servicing agreement ("PSA" or "Agreement"). The PSA established HSBC Bank as the trustee. In addition, the Agreement set May 1, 2007 as the cutoff date for accepting loans into the trust, and it set May 31, 2007 as the trust's closing date. The Mortgage Loan Purchase Agreement indicated that as of May 1, 2007, the note and mortgage were pooled into the trust. On October 8, 2009, MERS assigned its interest in the mortgage to HSBC Bank, as trustee.[1]

---

1. These financial transactions involve a complex series of transfers, assignments, and nominations, which the parties do little to elucidate. We note that these "mortgage pools" held in trust have been common in the context of mortgage-backed securities. The transactions at issue occurred in the midst of the 2007–2009 financial crisis and straddled Bank of America's (now infamous) acquisition

The Cocrofts apparently kept up with their loan payments until the summer of 2008. They made their last two payments by check in July and August (covering the months of May and June of 2008). Both of those payments were returned for insufficient funds. So, as far as we can tell, the final payment made by the Cocrofts occurred, at the latest, in April 2008. Countywide sent at least three letters to the Cocrofts notifying them of their delinquency, in May, June, and July of 2008.

By August 2008, Countrywide became aware that the Cocrofts' property was vacant and "a mess." Countrywide hired a contractor to change the locks, secure, and "winterize" the property. On August 29, David Cocroft attempted unsuccessfully to enter the home through the front door. He ultimately entered through the garage door instead.

The Cocrofts claim that in or about May 2009, they learned that Countrywide had made misrepresentations in connection with their loan. Between May and July 2009, the couple sent Bank of America,[2] MERS, and Cook County Sheriff Thomas Dart (through notary public Kathy Guinn) various documents that they termed "affidavits." These documents stated, in brief, that the Cocrofts were exercising their right to cancel the loan. They claimed to have the right to rescission because the lender committed various unspecified disclosure violations in contravention of several federal statutes. The Cocrofts did not offer to remit any of the loan funds.

Apparently in response to these "affidavits," on June 19, 2009, Bank of America sent a letter notifying the Cocrofts that their loan was valid and still in force. The letter also reminded the Cocrofts that their payments were severely delinquent.

Nonetheless, the Cocrofts recorded their "rescission" documents with the Cook County Recorder of Deeds on July 2, 2009.

On September 2, 2009, the Cocrofts sent documents identified as "Settlement and Closure" and "Cease and Desist" letters to Bank of America and Countrywide. Those letters asserted that the Cocrofts had exercised their right to cancel the loan, and in doing so, had extinguished any financial liability to Bank of America and Countrywide. In addition, they alleged that the property had been lawfully conveyed to "The David Cocroft Living Trust." The letters demanded that the recipients cease and desist any further activities related to the mortgage and loan, or face legal action.

On September 25, 2009, Codilis, a law firm hired by HSBC Bank, sent a letter notifying the Cocrofts that a foreclosure proceeding would be initiated against them. That letter identified HSBC Bank as trustee of the mortgage loan trust and BACHLS as the loan servicer. Apparently in response to that letter, the Cocrofts sent cease-and-desist letters to Codilis on September 30 and October 28, 2009.

On November 2 and 3, 2009, the Cocrofts sent HSBC Bank, Codilis, and the loan servicer a document they entitled a "Debt Collector Disclosure Statement," which purported to be a "continuation of the Cease and Desist letters" that had been previously sent. The Disclosure Statement was an eight-page questionnaire that required the addressees to answer fifty-four questions regarding their transactions with the Cocrofts. It stated that:

> [d]ebt collector's and/or Creditor's, failure/refusal, both intentional and otherwise, in completely, un-ambiguously answering points "1" through "54" above

---

of Countrywide. *See* http://www.forbes.com/sites/nathanvardi/2014/08/21/bank–of–americas-16–65–billion–settlement–and-the-last-dinosaur-of-the-financial-crisis/.

2. By this point, Bank of America had become Countrywide's successor in interest.

and returning this Debt Disclosure Statement, as well as providing Respondent with requisite verification validating he [sic] herein above reference [sic] alleged debt, constitutes the Debt Collector's and alleged Creditor's tacit acquiescence that Debt Collector and/or Creditor have no verifiable, lawful, bona fide claims against Respondent in above referred alleged account or any and all other alleged accounts not enumerated herein.

It also specified that failure to return a completed form within thirty days would result in the waiver of any claims against the Cocrofts, as well as the Cocrofts' full indemnification.

On November 23, 2009, HSBC Mortgage Services sent a letter in response, which stated that HSBC Bank was "not able to locate an account with the account number, your name, social security number, or address. Additionally, our search included our affiliates and accounts where we may be the trustee." The letter provided contact information, should the Cocrofts "require any additional information."

On December 17 and 18, 2009, both Bank of America and law firm Dilworth Paxson sent letters to the Cocrofts informing them that the loan had not been rescinded, was in full force, and that the Cocrofts' mortgage had been referred for foreclosure. On January 2, 2010, the Cocrofts sent the loan servicer copies of some of their previous correspondence, including the cease-and-desist letters.

On January 19, 2010, HSBC Bank brought a foreclosure action against the Cocrofts in Illinois state court.[3]

### B. Procedural History

The Cocrofts filed this federal lawsuit on June 3, 2010, alleging a variety of federal claims, as well as supplemental state law claims. Several of those claims were dismissed, and the Cocrofts do not appeal those dismissals. Defendants Bank of America, BACHLS, HSBC Bank, and MERS filed a motion for summary judgment on the remaining claims, which the district court granted. The Cocrofts appeal the grant of summary judgment on several, but not all, of those claims.

### 1. The Jenkins Affidavit and Testimony

Lanisa Jenkins was a "Vice President, Business Support Manager" at Bank of America. During the course of discovery, she provided both an affidavit and deposition testimony concerning Bank of America's relationship with the Cocrofts. She attested to having personal knowledge of the facts contained in the affidavit, based on her duties and responsibilities as a Bank of America Vice President. She also had personal knowledge of Bank of America's business records practices.

Jenkins attested in her affidavit that her duties included "maintaining, accessing, reviewing and being familiar with Bank of America's mortgage loan records, including residential loan applications." She further attested that those records were made at or near the time of the occurrence of the matters described by the records, and that those records were kept as part of Bank of America's regular business practices. She then described and attached as exhibits, among other documents, the original note for the loan at issue, held by Bank of America; the wiring instructions for the closing of the loan; the loan's payment history; and correspondence with the Cocrofts regarding the loan.

---

**3.** We note that the Cocrofts are no strangers to foreclosure actions: record evidence suggests that banks have sought to foreclose on four of the nine homes the Cocrofts have purchased since 1985.

Bank of America filed a copy of Jenkins's affidavit with its materials in support of summary judgment. In their memorandum in opposition to summary judgment, the Cocrofts requested that Jenkins's affidavit and deposition testimony be stricken for failure to comply with Rule 56(c). They argued that (1) at least some of Jenkins's statements were not based on her own personal knowledge, but on the knowledge of other parties; and (2) that the affidavit "alleges new and different facts then [*sic*] she previously alleged at her deposition which Plaintiffs' [*sic*] view as contradictory statements."

The district court overruled the Cocrofts' objection to the affidavit. It credited Jenkins's under-oath attestations that her statements were based on her own personal knowledge of Bank of America's business records, which she was responsible for maintaining. The district court also noted that the Cocrofts had not pointed to any specific inconsistencies between the deposition testimony and the affidavit that would render either inadmissible.

### 2. Illinois Consumer Fraud and Deceptive Business Practices Act Claim

The Cocrofts alleged a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). They contended that HSBC Bank's November 23 letter, in which it indicated that it was unable to locate an account for the Cocrofts, constituted a deceptive business practice. The district court concluded that the Cocrofts "offered no evidence that this was deceptive (HSBC Bank may have held the mortgage as trustee, but it was not servicing the loan), and given the lack of evidence, no reasonable finder of fact could find in their favor on this allegation." The district court granted summary judgment for HSBC Bank.

### 3. Fraudulent Possession Claim

The Cocrofts alleged a state law fraudulent possession claim based on Countrywide's actions in August 2008, when it changed the locks and "winterized" the property. The district court concluded that Countrywide did interfere with the Cocrofts' property interest, but that no reasonable fact finder could conclude that such interference was wrongful. The court found that a provision in the mortgage entitled Countrywide to the type of entry it made, and that the Cocrofts consented to such an entry in signing the mortgage instrument. The court granted summary judgment for Appellees on this claim.

### 4. Quiet Title Claim

Finally, the Cocrofts raised a claim to quiet title, on the grounds that their loan was transferred into the mortgage loan trust in violation of the pooling and servicing agreement. The Cocrofts alleged that the loan was actually transferred into the trust after May 1, 2007. As such, they argued, the transfer was void, and HSBC Bank subsequently lacked title to the property.

The district court concluded that the Cocrofts had standing to challenge the transfer, but that they did not offer any evidence "that would allow a reasonable finder of fact to determine that their loan was improperly transferred into the trust." The court granted summary judgment for Appellees.

## II. ANALYSIS

We conclude that the Cocrofts fail to raise any genuine issues of material fact, and we affirm the district court's grant of summary judgment. We treat each claim in turn.

### A. The Jenkins Affidavit and Testimony

We review for abuse of discretion a district court's refusal to strike or disregard an affidavit (or portions thereof) in a motion opposing summary judgment. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 318 (7th Cir.2003), as amended (May 22, 2003).

In their memorandum in opposition to summary judgment, the Cocrofts requested that the district court strike both Jenkins's affidavit and her deposition testimony that had been submitted by Appellees. The Cocrofts raised two arguments in support of their request: (1) that the affidavit failed to satisfy Rule 56's requirement that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge," Fed. R.Civ.P. 56(c)(4); and (2) that because portions of the affidavit and deposition testimony conflicted, both must be stricken. The district court overruled the Cocrofts' objection.

We agree with the district court that the affidavit satisfied the personal knowledge requirement of Rule 56. The Cocrofts concede that Jenkins was familiar with Bank of America's business records. They argue, however, that the affidavit was nonetheless inadmissible, for three reasons: (1) Jenkins couldn't be adequately familiar with the procedures used by Countrywide before it was acquired by Bank of America; (2) Jenkins didn't offer any testimony regarding how accurate Bank of America's records were; and (3) at least some of the records were prepared by other Bank of America employees, not Jenkins herself.

All three of these arguments fail. First, Jenkins was qualified to attest to the business records obtained by virtue of Bank of America's acquisition of Countrywide. Second, Rule 56 does not impose the onerous personal knowledge require-

ments that the Cocrofts read into it. Jenkins stated that her job duties included familiarity with and maintenance of Bank of America's records. When it comes to testifying about business records, "the custodian need not be the individual who personally gather[ed] ... a business record. The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices." *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006) (internal quotation marks omitted).

The Cocrofts point to no evidence suggesting that any of the business records at issue were inaccurate, or somehow unreliable. Jenkins provided sufficient indicia of their reliability by attesting to the fact that they were prepared in the regular course of business and close in time to the actions they described. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). This comports with the very rationale underlying the business record exception to the hearsay rule.

> [T]he reliability of business records is supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, and/or by a duty to make an accurate record as part of a continuing job or occupation. Given the nature of the reliability of business records, it makes no difference whether the records are those of a party or of a third person.

30C Michael H. Graham, Fed. Prac. & Proc. Evid. § 7047 (2014 ed.). Jenkins's testimony and affidavit satisfied the requirements of Rule 56.

As for the Cocrofts' second argument, they contend that portions of the affidavit contradict aspects of Jenkins's deposition testimony. Those contradictions, they argue, render both Jenkins's affidavit and

her testimony inadmissible. The Cocrofts cite a Supreme Court case as establishing that "an affiant may not contradict or undermine their [*sic*] deposition testimony with a later affidavit." *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). The Cocrofts misread that case.

■ First, *Cleveland* does not state the proposition that the Cocrofts claim. *Cleveland* had nothing to do with the admissibility of conflicting evidence. Instead, the Court noted by way of analogy, without offering an opinion, that the circuits had held "with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement. (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Id.* at 806, 119 S.Ct. 1597. This statement does not create an evidentiary ban on conflicting testimony. It simply notes a piece of uniformity among the circuits: a party cannot "manufacture" a dispute by offering *its own* (inexplicably) contradictory testimony.

And second, the situation described by *Cleveland* doesn't exist in this case. Here, Appellees moved for summary judgment, and Appellees offered the allegedly conflicting pieces of evidence. Appellees obviously were not attempting to survive summary judgment—they were attempting to win it. *Cleveland*, therefore, has no application here.

In fact, Appellees' submission of conflicting pieces of evidence could, at least in theory, have *helped* the Cocrofts. If they had identified specific, material factual discrepancies, and if those discrepancies had

established a genuine dispute, the Cocrofts might have argued that they should survive summary judgment. The Cocrofts, however, identified no such specific, material contradictions. Instead, they argued that the affidavit and deposition must be stricken *in toto*. Even if portions of the affidavit and deposition had conflicted, excluding them in their entirety would not have been the appropriate remedy. So the Cocrofts' argument fails.

We conclude that the district court did not abuse its discretion in overruling the Cocrofts' objection.

## B. The ICFA Claim

■ The district court granted summary judgment for the defendants on the ICFA claim, and we review *de novo* a grant of summary judgment. *Stern v. St. Anthony's Health Center*, 788 F.3d 276, 284 (7th Cir.2015).[4]

■ The district court correctly identified the standard for a plaintiff to prevail on an ICFA claim. The plaintiff must prove that (1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury. *See Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 593 (1996). A showing of actual reliance is not required. *Id.*

■ The Cocrofts argue that HSBC Bank's November 23 statement, which indicated that it was unable to locate an account for the Cocrofts, constituted a deceptive practice. We need not determine whether the letter was deceptive, because we conclude that the Cocrofts did not show that they suffered any injury as a result of

4. The same standard applies to the Cocrofts' claims for fraudulent possession and quiet title, discussed below.

the statement. Without establishing injury, the Cocrofts cannot fulfill the fourth element of the ICFA claim. Therefore, they cannot survive summary judgment.

In their briefs, the Cocrofts do not identify what injury they suffered as a result of the November 23 letter. The only statement that might be reasonably construed as asserting an injury is that "[t]he Cocrofts spent their resources and time attempting to communicate with the proper parties regarding the loan." Presumably, the Cocrofts' argument is that they forfeited some opportunity to send a necessary communication to HSBC Bank regarding the loan, because they believed, following the letter, that it did not hold an interest in their loan.

But by November 23, the Cocrofts were well aware that HSBC Bank had instituted foreclosure actions against them. Had it denied any interest in the loan, the Cocrofts could have used that denial against HSBC Bank in its foreclosure action. If anything, any misrepresentation committed by HSBC Bank in that letter would have benefitted the Cocrofts—not injured them.

Without alleging a cognizable injury, the Cocrofts cannot succeed in their ICFA claim. We affirm the grant of summary judgment.

### C. The Fraudulent Possession Claim

■ In their complaint, the Cocrofts raised a claim of "fraudulent possession" against Countrywide, HSBC Bank, MERS, and Bank of America. The complaint did not cite an applicable statute. In their response to Bank of America's and

BACHLS's motion for summary judgment, the Cocrofts alleged that Bank of America and BACHLS violated Illinois Code of Civil Procedure § 15–1701(b)(1).[5]

That code section governs "the right to possession of . . . mortgaged real estate during foreclosure." 735 ILCS § 5/15–1701(a). Section (b)(1) provides that "the mortgagor shall be entitled to possession of the real estate except if (i) the mortgagee shall show good cause, (ii) the mortgagee is so authorized by the terms of the mortgage or other written instrument, and (iii) the court is satisfied that there is a reasonable probability that the mortgagee will prevail on a final hearing of the cause." 735 ILCS § 5/15–1701(b)(1). The Cocrofts claim that Bank of America and BACHLS cannot satisfy the standard set out in this provision, and thus engaged in fraudulent possession.

We need not describe in detail the Cocrofts' arguments in support of their contention that Bank of America and BACHLS violated this statute, for the simple reason that the statute does not apply. The allegedly offending entry occurred in August 2008. HSBC Bank did not file the foreclosure action against the Cocrofts until January of 2010. This statute governs "the right to possession of the mortgaged real estate *during foreclosure*." 735 ILCS § 5/15–1701(a) (emphasis added). The Cocrofts have not identified any authority— either case law or statutory—to suggest that this statute applies *before* foreclosure has been initiated. Therefore, we conclude that the Cocrofts did not raise a genuine issue of material fact, and summary judgment was appropriate.[6]

---

**5.** The Cocrofts also sometimes refer to this as a "trespass" claim, as did the district court. As the Cocrofts only cite 735 ILCS § 5/15–1701(b)(1) as the applicable statute, they do not appear to raise a trespass claim.

**6.** We note that the Cocrofts may have had a viable claim for criminal trespass under 720

ILCS § 5/21–3—an entirely different statute than that relied upon by the Cocrofts. That statute makes it unlawful for an individual to "knowingly and without lawful authority [enter] or [remain] within or on a building." 720 ILCS § 5/21–3(a)(1). That subdivision, however, includes an exception that applies to

## D. The Quiet Title Claim

 An action to quiet title in property "is an equitable proceeding in which a party seeks to remove a cloud on his title to the property." *Hoch v. Boehme*, 371 Ill.Dec. 462, 990 N.E.2d 362, 374 (App.Ct. 2013). The Cocrofts argue that their loan (or their mortgage—their arguments are not entirely clear) was transferred into the trust after the trust's closing date, in violation of the pooling and servicing agreement. They claim that under New York law (which all parties agree governs the PSA), that transfer was automatically void; as a result, HSBC Bank does not hold title to the property.

Appellees argue, on the other hand, that even if the transfer occurred in violation of the PSA, the transfer would be *voidable*, not *void*. And under New York law, third-party non-beneficiaries of a trust lack standing to challenge a merely voidable transfer. For the purposes of this discussion, we assume without deciding that a late transfer occurred.

New York Estates, Powers, and Trusts Law § 7–2.4 concerns when the actions of a trustee are considered void. It provides that "[i]f the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." N.Y. Est. Powers & Trusts Law § 7–2.4 (McKinney).

The Cocrofts argue that the late transfer constituted an *ultra vires* act that, under § 7–2.4, was automatically void. In interpreting this statute, however, New York courts appear to have almost uniformly concluded that a beneficiary retains the authority to ratify a trustee's *ultra vires* act, such as a late transfer. *See Mooney v. Madden*, 193 A.D.2d 933, 597 N.Y.S.2d 775, 776 (N.Y.App.Div.1993); *see also Anh Nguyet Tran v. Bank of New York*, No. 13 Civ. 580, 2014 WL 1225575 at *5 (S.D.N.Y. Mar. 24, 2014) (collecting New York cases holding the same). And therefore, the cases hold, because the act can be ratified, it must not be void; it must merely be voidable.

The Cocrofts have presented no evidence to suggest that the trust's beneficiaries lacked the authority to ratify acts by the trustee. They have pointed to no provision in the PSA, or any other document, that would indicate such a limitation on the power of the beneficiaries. We conclude, therefore, that the transfer was not void, but at most merely voidable. That brings the transfer outside the ambit of § 7–2.4.

 Given that the transfer was only voidable, we now turn to whether the Cocrofts have standing to challenge it. The weight of New York Law establishes that "litigants who are not beneficiaries of a trust lack standing to enforce the trust's terms or to challenge the actions of the trustee." *Tran*, 2014 WL 1225575 at *3. The Cocrofts do not allege that they were intended third-party beneficiaries of the trust. Nor do they point to any provision in the PSA that extended them rights or obligations under the trust.

The Cocrofts cite one New York case, an unreported disposition, in support of their contention that they have standing to chal-

---

the mortgagee, or agent of the mortgagee, for "entering, securing, or maintaining an abandoned residential property." 720 ILCS § 5/21–3(e–5). Abandoned residential property is defined in cross-referenced section 735 ILCS 5/15–1200.5. The Cocrofts might have plausibly argued that the property did not satisfy the requirements to be considered abandoned, and thus that Countrywide's (Bank of America's) entry was unlawful. We need not address this issue, however, because the Cocrofts waived it by failing to raise it below.

lenge the transfer. In that case, the Kings County Supreme Court determined that a non-beneficiary third party had standing to challenge a trustee's acceptance of a note and mortgage into the trust after its closing date. *Wells Fargo Bank, N.A. v. Erobobo,* 972 N.Y.S.2d 147, 39 Misc.3d 1220(A) at *8 (N.Y.Sup.Ct.2013). We need not dwell on the court's reasoning in that case, because in April 2015 that decision was reversed by the Appellate Division of the New York Supreme Court. On appeal, the court held that "Erobobo, as a mortgagor whose loan is owned by a trust, does not have standing to challenge the plaintiff's possession or status as assignee of the note and mortgage based on purported noncompliance with ... the PSA." *Wells Fargo Bank, N.A. v. Erobobo,* 127 A.D.3d 1176, 9 N.Y.S.3d 312, 314 (2015).

We conclude that the Cocrofts lack standing to challenge the transfer. Their action to quiet title must fail, and summary judgment for Appellees was appropriate.

### III. CONCLUSION

For the reasons above, the judgment of the district court is AFFIRMED.