In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2459

IN RE: PATRICIA JEPSON,

*Debtor-Appellant*,

*v.*

BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-1,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-00423 — **James F. Holderman**, *Judge*.

ARGUED OCTOBER 30, 2015 — DECIDED MARCH 22, 2016

Before POSNER, RIPPLE, and HAMILTON, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Patricia Jepson filed a Chapter 7 voluntary petition in the United States Bankruptcy Court for the Northern District of Illinois. That petition resulted in an automatic stay against the enforcement of any security interest. Bank of New York Mellon ("BNYM") then requested a modification of the automatic stay so that it could resume in

Illinois state court an ongoing foreclosure action against Ms. Jepson. In response, Ms. Jepson filed both an opposition to the motion for modification of the stay and an adversary complaint. In both documents, she sought a declaration that BNYM had no interest in her mortgage. The bankruptcy court granted the motion to modify the automatic stay and dismissed Ms. Jepson's adversary complaint. The district court affirmed the bankruptcy court's orders. For the reasons set forth in this opinion, we affirm in part and remand the case for further proceedings.

# I

## BACKGROUND

In December 2005, Ms. Jepson executed a note secured by a mortgage on property located in Palatine, Illinois. In exchange for the note, Ms. Jepson received a $336,000.00 loan from America's Wholesale Lender ("America's"). The mortgage listed America's as the named lender and Mortgage Electronics Registration Systems, Inc. ("MERS") as the nominee for America's.

Ms. Jepson's note subsequently was endorsed in blank by Countrywide Home Loans, Inc., "doing business as America's Wholesale Lender."[1] Countrywide also transferred Ms. Jepson's note to "CWABS Trust,"[2] which is a residential mortgage-backed securities ("RMBS") trust.[3] In a RMBS

---

[1] R.1-3 at 21.

[2] Specifically, CWABS, Inc., Asset-Backed Certificates, Series 2006-1.

[3] Ms. Jepson contends that the note's endorsement occurred long after the closing date of the assignment of her mortgage to the CWABS trust.

(continued…)

trust, residential mortgage loans are pooled and then certificates backed by these mortgages are sold to investors (known here as "Certificateholders"). The CWABS Trust was formed and governed by a written agreement known as a Pooling and Service Agreement ("PSA"). The PSA set forth the rights, duties, and obligations of the parties to the trust.

BNYM, the trustee for the CWABS Trust, now possesses Ms. Jepson's note. In addition, MERS assigned the rights associated with Ms. Jepson's mortgage to BNYM. Based on these facts, BNYM claims to have been assigned interests in both Ms. Jepson's note and Ms. Jepson's mortgage.

At some unspecified time between 2005 and 2008, Ms. Jepson defaulted on her monthly obligations to pay principal, interest, and taxes. BNYM filed a complaint in the Circuit Court of Cook County, Illinois, on August 12, 2008, to foreclose on the mortgage.

On July 25, 2012, while the foreclosure proceedings were still underway, Ms. Jepson filed a Chapter 7 Voluntary Petition in the United States Bankruptcy Court for the Northern District of Illinois. That petition resulted in an automatic stay of BNYM's foreclosure action.[4] BNYM then filed a motion in

---

(…continued)
However, we need not resolve this factual dispute to dispose of the matters before us.

[4] When a petition in bankruptcy is filed, the automatic stay provisions of 11 U.S.C. § 362 take effect and prevent creditors from taking any action to collect on their debts. *Id.* § 362(a); *see also In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1231 (7th Cir. 1990). However, "[t]here may be no reason to make the creditor wait until the final distribution of the estate." *Vitreous Steel*, 911 F.2d at 1231. As Congress acknowledged when enacting the
(continued…)

the bankruptcy court, requesting that the court modify the automatic stay.

Ms. Jepson responded to BNYM's motion on October 20, 2012. On the same day, she filed a two-count adversary complaint against BNYM. The first count sought a declaration that BNYM has no interest in Ms. Jepson's mortgage. This count raised three main objections: (1) The note does not include a complete chain of intervening endorsements and therefore could not be assigned to BNYM under the terms of the PSA; (2) The note was endorsed after the closing date in the PSA, which made the assignment invalid; and (3) America's is a fictitious entity, and therefore the note is void and not negotiable under Illinois law. The second count raised a fourth objection, contending that BNYM lacked the

---

 (…continued)

Bankruptcy Reform Act of 1978, which codified § 362, there may be "a desire to permit an action to proceed to completion in another tribunal," or certain creditors may have claims that "lack … any connection with or interference with the pending bankruptcy case." H.R. Rep. No. 95-595, at 343 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6300.

For these reasons, and others, the Bankruptcy Code includes a provision for creditors to seek relief from automatic stay. 11 U.S.C. § 362(d) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay."). If the bankruptcy court grants relief, then a creditor can immediately seek payment before another tribunal. If the court denies relief, then the creditor "must simply comply with the automatic stay, and wait with the other creditors for the estate's administration." *Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 34 (1st Cir. 1994).

authority to act "as a collection agency" in Illinois by fore-closing on the property.[5]

BNYM moved to dismiss the adversary complaint on the grounds that Ms. Jepson lacked standing and had failed to state a claim. At a December 10, 2013 hearing, the bankrupt-cy court, ruling orally and summarily from the bench, agreed that, under the governing New York law, Ms. Jepson lacked standing to challenge alleged violations of the PSA.[6] Accordingly, the bankruptcy court dismissed the adversary complaint and modified the automatic stay to allow BNYM to proceed with its foreclosure action in the Illinois state courts. The bankruptcy court did not address Ms. Jepson's other contentions that the foreclosure action was infirm.[7]

Ms. Jepson then appealed to the United States District Court for the Northern District of Illinois, raising the same four arguments that she had presented in the bankruptcy court. The district court affirmed the bankruptcy court's judgment. It agreed that Ms. Jepson did not have standing to bring claims based on noncompliance with the PSA. Like the

---

[5] R.1-5 at 76–79.

[6] R.9 at 10.

[7] The record before us contains no indication as to why the bankruptcy court did not abstain from deciding the adversary proceeding altogether and grant the motion to modify the stay, thus permitting all issues per-taining to the forfeiture action to be heard in state court. *See* 28 U.S.C. § 1334(c)(1) (allowing a court to abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law"). The parties apparently acquiesced in the bankruptcy court's way of proceed-ing and certainly present no argument concerning the propriety of the bankruptcy court's actions here.

bankruptcy court, it did not address her other claims. Ms. Jepson now timely appeals.

## II

## DISCUSSION

"Like the district court, we review a bankruptcy court's factual findings for clear error and its legal conclusions de novo." *In re Miss. Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). On a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, by accepting all of the well-pleaded facts and drawing all inferences in the plaintiff's favor. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015); *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012).

### A.

Ms. Jepson contends that the transfer of her note and mortgage violated the PSA. She submits that the assignment of her mortgage was missing intervening endorsements and that the note was transferred after the proper closing date. In her view, because the assignment violated the PSA, BNYM cannot collect on the note.

The bankruptcy court and the district court correctly held that Ms. Jepson lacks standing to raise a challenge based on violations of the PSA because she is not a third-party beneficiary under the agreement. The "prudential standing rule … normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth v. Seldin*, 422 U.S. 490, 509 (1975). Instead, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 499; *see also Edge-*

*wood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 771 (7th Cir. 2013).

The text of the PSA states that "[t]his agreement shall be construed in accordance with and governed by the substantive laws of the State of New York."[8] Therefore, Ms. Jepson must establish that, under the law of New York, she has a cognizable interest that permits her to challenge the validity of the PSA. We think that, at this point, it is well established that she does not. As our colleagues in the Second Circuit have stated, "under New York law, only the intended beneficiary of a private trust may enforce the terms of the trust." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 88 (2d Cir. 2014); *see also Cashman v. Petrie*, 201 N.E.2d 24, 26 (N.Y. 1964) ("A person who might incidentally benefit from the performance of a trust but is not a beneficiary thereof cannot maintain a suit … to enjoin a breach."); *Tran v. Bank of New York*, No. 13 Civ. 580, 2014 WL 1225575, at *3 (S.D.N.Y. Mar. 24, 2014) (collecting New York cases).

New York courts have held uniformly that "a mortgagor whose loan is owned by a trust" is not an intended beneficiary of a trust, and "does not have standing to challenge the [trustee]'s possession or status as assignee of the note and mortgage based on purported noncompliance with certain provisions of [a] PSA." *Wells Fargo Bank, N.A. v. Erobobo*, 9 N.Y.S.3d 312, 314 (N.Y. App. Div. 2015), *leave to appeal dismissed*, 37 N.E.3d 1158 (N.Y. 2015); *see also Bank of New York*

---

[8] R.8-2 at 40 (Section 10.03). Neither side disputes that New York law applies. Appellant's Br. 24; Appellee's Br. 10; *see also Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 689 (7th Cir. 2015) (applying the law of the forum that all parties agreed governed the trust agreement).

*Mellon v. Gales*, 982 N.Y.S.2d 911, 912 (N.Y. App. Div. 2014); *Rajamin*, 757 F.3d at 87–88. Rather, the certificateholders of a trust are the intended beneficiaries. *Rajamin*, 757 F.3d at 90. Mortgagors "are not even incidental beneficiaries of" a trust, as "their interests are adverse to those of the certificateholders." *Id.* Therefore, Ms. Jepson—a mortgagor—is not an intended beneficiary of the PSA and does not have standing to challenge an assignment for failing to conform to the PSA.

In an effort to distinguish this authority, Ms. Jepson contends that, as a mortgagor, she still has standing to challenge a *void* assignment. She relies on the theory that:

> A debtor may, generally, assert against an assignee all equities or defenses existing against the assignor prior to notice of the assignment, *any matters rendering the assignment absolutely invalid or ineffective*, and the lack of the plaintiff's title or right to sue; but, if the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his or her shoes.

6A C.J.S. *Assignments* § 133 (2016) (emphasis added); *see also Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354 (1st Cir. 2013) (holding that, under Massachusetts law, a mortgagor has standing to "challenge[] a mortgage assignment as invalid, ineffective, or void" (internal quotation marks omitted)). Put another way, a *voidable* assignment is one that intended beneficiaries can ratify. *See Rothko v. Reis (In re Estate of Rothko)*, 372 N.E.2d 291, 299 (N.Y. 1977). The prudential standing rule therefore prevents a mortgagor from challenging a

voidable assignment because such a challenge would "interfere with the beneficiaries' right of ratification." *Rajamin*, 757 F.3d at 89. A *void* assignment, however, cannot be ratified by the beneficiaries. A mortgagor therefore has prudential standing to challenge a void assignment because such a challenge would not infringe on any of the beneficiaries' rights.

In evaluating this argument, we note as an initial matter that New York state courts never have endorsed squarely the theory that a mortgagor has standing to challenge a void assignment. *See id.* at 88–89 (entertaining this theory but not concluding whether, under New York law, mortgagors actually have standing to challenge void assignments). In any event, New York courts consistently have held that an assignment that fails to comply with the terms of a trust agreement merely is voidable and *not* void. *Id.* at 88–90 (collecting cases); *see also Erobobo*, 9 N.Y.S.3d at 314. To be sure, the governing New York State statute does state that "[i]f the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by … law, is *void*." N.Y. Estates, Powers and Trusts Law § 7-2.4 (McKinney 2016) (emphasis added). As we have noted earlier, however, in interpreting this statute, "New York courts appear to have almost uniformly concluded that a beneficiary retains the authority to ratify a trustee's *ultra vires* act." *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 689 (7th Cir. 2015) (citing *Mooney v. Madden*, 597 N.Y.S.2d 775, 776 (N.Y. App. Div. 1993), and *Tran*, 2014 WL 1225575, at *5). If a beneficiary is able to ratify an unauthorized mortgage assignment, then the assignment is merely voidable and cannot be challenged by a mortgagor. *Id.*

Ms. Jepson also contends that provisions *unique to this PSA* prevent the intended beneficiaries (the Certificateholders) from ratifying assignments that fail to comply with the PSA. She therefore believes that assignments which fail to comply with this PSA are automatically void. In making this argument, Ms. Jepson relies on section 10.01 of the PSA, which states that "[t]he Trustee, the Depositor, the Master Servicer and the Sellers with the consent of the NIM Insurer may … amend this Agreement, without the consent of the Certificateholders."[9] Ms. Jepson contends that if the Certificateholders cannot amend the agreement, they cannot ratify ultra vires assignments.

Upon closer inspection of the PSA, however, Ms. Jepson's argument falls short. The PSA requires the Master Servicer to speak and provide consent on behalf of the Certificateholders.[10] This provision shows that the Certificateholders have a voice in the amendment process. Further, the PSA

---

[9] R.8-2 at 38 (Section 10.01).

[10] Specifically, the PSA reads:

> For and on behalf of the Certificateholders, the Master Servicer shall service and administer the Mortgage Loans … . [T]he Master Servicer shall have full power and authority … (i) to execute and deliver, on behalf of the Certificateholders and the Trustee, customary consents or waivers and other instruments and documents, (ii) to consent to transfers of any Mortgaged Property and assumptions of the Mortgage Notes and related Mortgages (but only in the manner provided in this Agreement).

R.8-1 at 78 (Section 3.01).

contemplates that Certificateholders may contest unauthor-ized acts through a derivative action.[11] Contrary to Ms. Jep-son's argument, the PSA provides a way for Certificatehold-ers to ratify or challenge any unauthorized acts. Therefore, an alleged breach of the PSA merely renders the assignment voidable.

We conclude that Ms. Jepson lacks standing to raise any challenges based on alleged violations of the PSA.

**B.**

In her adversary complaint, Ms. Jepson brought addi-tional claims that were *not* based on alleged violations of the PSA. First, Ms. Jepson contended that the note was both void and not a negotiable instrument because America's is a ficti-tious entity. Second, Ms. Jepson contended that BNYM is an unlicensed debt collector under the Illinois Collection Agen-cy Act, 225 ILCS 425/4, and it therefore lacks the authority to foreclose on the mortgage. Although Ms. Jepson presented these claims at every proceeding before the bankruptcy court, district court, and this court, neither the bankruptcy court nor the district court ever addressed these claims. Both courts dismissed Ms. Jepson's adversary complaint in its en-tirety because Ms. Jepson lacked standing to challenge the PSA, even though these claims did not arise out of alleged violations of the PSA.

---

[11] R.8-2 at 43 (Section 10.08).

We therefore conclude that a remand is necessary.[12] We note, however, that these claims involve questions of Illinois state law and that an Illinois state foreclosure proceeding on Ms. Jepson's mortgage is pending. The bankruptcy court therefore has the authority to abstain from adjudicating the remainder of the complaint "in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1); *see also In re Williams*, 144 F.3d 544, 550 (7th Cir. 1998) (explaining that deciding similarly narrow issues of state law through a bankruptcy proceeding "would not be a particularly efficient use of judicial resources" and may encourage forum shopping). The bankruptcy court therefore ought to consider whether it would be appropriate to abstain from hearing the remainder of the adversary proceeding and to allow the Illinois courts to consider these claims in the foreclosure proceeding.

**Conclusion**

We therefore affirm in part the judgment of the district court and remand the case for further proceedings consistent with this opinion. The parties shall bear their own costs in this court.

AFFIRMED IN PART AND REMANDED IN PART

---

[12] *See Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 708 (7th Cir. 2009) (remanding when the bankruptcy court had not addressed an issue); *In re Scott*, 172 F.3d 959, 970–71 (7th Cir. 1999) (remanding when the district and bankruptcy courts had not tried the issue under the proper standard because we found "it prudent").