In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 14-2459

IN RE: PATRICIA JEPSON,

*Debtor-Appellant*,

*v.*

BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-1,

*Defendant-Appellee*.

————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-00423 — **James F. Holderman**, *Judge*.

————————

ON MOTION FOR STAY OF MANDATE

APRIL 15, 2016

————————

RIPPLE, *Circuit Judge* (in chambers). Patricia Jepson has filed a motion requesting that I stay this court's mandate pending final disposition of this litigation in the Supreme Court of the United States. She represents that she plans to file a petition for a writ of certiorari within the next ninety days. Because I do

not believe that she has presented any issue upon which the Court will grant certiorari and because I believe that, even if certiorari were granted, a majority of the Court would not reverse our judgment, I deny the motion.

The underlying facts of this litigation are set forth in plenary fashion in our opinion. I will simply summarize them here. Patricia Jepson took out a mortgage that was transferred by the lender and ultimately assigned to CWABS Trust, a residential mortgage-backed securities ("RMBS") trust that was formed and governed by a Pooling and Service Agreement ("PSA"). Bank of New York Mellon ("BNYM") is the trustee for the CWABS Trust and possesses the mortgage note. When Ms. Jepson defaulted on her monthly payment obligations, the bank filed a complaint in the Circuit Court of Cook County to foreclose on the mortgage.

Ms. Jepson then filed for bankruptcy under Chapter 7. That filing automatically stayed the bank's foreclosure action, and the bank moved to modify the automatic stay in the bankruptcy court. Ms. Jepson opposed the motion and initiated an adversary proceeding against the bank, claiming (1) that the bank had no interest in the mortgage because the note could not be assigned to the bank under the terms of the PSA, (2) that the note was void and not a negotiable instrument because the original lender is a fictitious entity, and (3) that the bank did not have the authority to foreclose on the property because the bank is not a collection agency under Illinois law.

The bankruptcy court concluded that Ms. Jepson lacked standing to challenge violations of the PSA. Accordingly, the court dismissed the adversary complaint and lifted the automatic stay to allow the bank to proceed with the foreclosure action in Illinois state court. The bankruptcy court did not,

however, address Ms. Jepson's other claims. The district court affirmed the bankruptcy court's judgment but likewise did not consider the claims that were not related to alleged violations of the PSA.

Ms. Jepson appealed from the district court's judgment, and, after full consideration of the briefs and oral argument by the parties, we concluded that "[t]he bankruptcy court and the district court correctly held that Ms. Jepson lacks standing to raise a challenge based on violations of the PSA because she is not a third-party beneficiary under the agreement." *In re Jepson*, No. 14-2459, slip op. at 6 (7th Cir. Mar. 22, 2016). We also concluded, however, that remand was necessary because neither the bankruptcy court nor the district court had addressed the claims that were not based on alleged violations of the PSA. *Id.* at 11–12. Accordingly, we affirmed in part the judgment of the district court and remanded the case for further proceedings with respect to the claims that had not been considered by the bankruptcy court or the district court. *Id.* at 12.

After the rendition of our decision, Ms. Jepson filed this motion for a stay of our mandate pending the disposition of a petition for a writ of certiorari by the Supreme Court. The standards that must govern my consideration of this motion are well established. A party asking this court to stay its mandate pending the filing of a petition for a writ of certiorari "must show that the petition will present a substantial question and that there is good cause for a stay." *Books v. City of Elkhart*, 239 F.3d 826, 827 (7th Cir. 2001) (Ripple, J., in chambers). To show a reasonable probability of success, the party must demonstrate a reasonable probability that four Justices will vote to grant certiorari as well as a reasonable possibility that five Justices would vote to reverse our judgment.

*Bricklayers Local 21 of Illinois Apprenticeship & Training Program v. Banner Restoration, Inc.*, 384 F.3d 911, 912 (7th Cir. 2004) (Ripple, J., in chambers).

In an attempt to meet this demanding standard, Ms. Jepson states that she intends to raise in her petition for a writ of certiorari whether "a mortgage borrower [has] standing to contest an assignment of its note and mortgage to a Real Estate Investment Conduit (REMIC) trust based on the assignment being void." In her view, "there is a split between the Circuits on this issue"—with the Seventh and Second Circuits on one side of the divide and the First Circuit on the other.

I cannot accept Ms. Jepson's submission. She has demonstrated, at best, that the First and Second Circuits may well disagree on whether a mortgagor like Ms. Jepson has *constitutional* standing under Article III to raise a challenge based on violations of an agreement like the PSA. *See Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 85–86 (2d Cir. 2014); *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 289–90 (1st Cir. 2013). But this disagreement is not operative in the present litigation. We simply did not base our decision on whether Ms. Jepson had constitutional standing to challenge a violation of the PSA. Our focus was on whether Ms. Jepson lacked *prudential* standing. On that issue, there is no conflict among the circuits. The circuits identified by Ms. Jepson have reached different conclusions on prudential standing only because their decisions rested on the laws of different states. For instance, in this case, we held that Ms. Jepson lacked prudential standing on the basis of *New York law*, which governs Ms. Jepson's claims that the PSA had been violated. (The PSA states that, "[t]his agreement shall be construed in accordance with and governed by the substantive laws of the State of New York."

*In re Jepson*, No. 14-2459, slip op. at 7 (internal quotation marks omitted).) We noted that, on this point, our reading of New York law was in accord with that of the Second Circuit. *Rajamin*, 757 F.3d at 86–87. The First Circuit, on the other hand, applied *Massachusetts law* when it concluded in *Culhane* that the mortgagor in that case had prudential standing. Indeed, that court made clear that it was "hold[ing] only that Massachusetts mortgagors, under circumstances comparable to those in this case, have standing to challenge a mortgage assignment." *Culhane*, 708 F.3d at 290.

Ms. Jepson identifies no other issue that she plans to raise in her petition for a writ of certiorari. Instead, the remainder of her motion merely repeats arguments that we rejected in our opinion without explaining why she believes that those arguments create a reasonable probability that four Justices will vote to grant the writ of certiorari and that five Justices will vote to reverse this court's judgment.

Finally, Ms. Jepson also contends that, absent a stay, she will suffer irreparable injury because she "will be forced to incur legal fees in both the Bankruptcy Court and the Supreme Court while both courts determine if the assignments were void." This is all that Ms. Jepson says about the matter, however, and given her lack of specificity or elaboration, this statement is not sufficient to establish the likelihood of irreparable injury.

Accordingly, Ms. Jepson's motion for a stay of the mandate is denied.

Motion for Stay of Mandate Denied