In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-2246

SKYLER TACKETT,

*Plaintiff-Appellant,*

*v.*

KRISTEN DAUSS,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:21-cv-02809 — **James R. Sweeney, II**, *Judge.*

ARGUED APRIL 16, 2024 — DECIDED MARCH 31, 2025

Before ST. EVE, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. This tragic case arises out of an Indiana inmate's untimely death from a lack of appropriate medical care. Raymond Tackett suffered from Hepatitis C for years without ever receiving direct-acting antivirals—a form of treatment that cures Hepatitis C in a matter of weeks. On November 29, 2019, he died from Hepatitis C complications.

Mr. Tackett's daughter Skyler Tackett is the personal representative of his estate. Ms. Tackett brought an Eighth Amendment deliberate indifference claim, plus a state law medical malpractice claim, against the medical professionals who treated Mr. Tackett; the Indiana Department of Corrections' medical contractor, Wexford Health Services; and the Chief Medical Officer of the Indiana Department of Corrections, Dr. Kristen Dauss. Ms. Tackett subsequently dismissed all claims and defendants except for the deliberate indifference claim against Dr. Dauss. Ms. Tackett and Dr. Dauss both moved for summary judgment, and the district court granted summary judgment in Dr. Dauss's favor. Ms. Tackett now appeals. Because we find that Ms. Tackett presented insufficient evidence for a reasonable jury to find Dr. Dauss liable in her individual capacity, we affirm the district court's judgment.

**I**

Raymond Tackett was an inmate with the Indiana Department of Corrections ("IDOC") who had been diagnosed with Hepatitis C ("HCV") around 2008. HCV is a viral illness transmitted through blood and blood products. About 15–25% of people infected with HCV resolve their infection within the first six months, but for the other 75–85% of people infected, HCV can become a chronic, disabling infection. Chronic HCV can lead to a variety of debilitating health outcomes, including liver damage, liver failure, liver cancer, cirrhosis, kidney failure, diabetes, and death.

Before the advent of reliable therapies, medical professionals treated HCV infections with a combination of often-ineffective drugs that caused significant side effects. But the HCV treatment protocol changed after pharmaceutical companies developed a new form of direct-acting antivirals

("DAAs") that completely cure HCV infections in as little as eight to twelve weeks. According to the complaint, the Food and Drug Administration approved these DAAs in 2013. By 2017, a panel of experts convened by the Infectious Diseases Society of America and the American Association for the Study of Liver Diseases explicitly recommended that all patients with chronic HCV infections (except those with short life expectancies that cannot be remedied) receive DAAs. This has been the national standard of care since that time, according to an expert Ms. Tackett retained.

Despite the efficacy of DAAs, the IDOC failed to consistently provide them to inmates with chronic HCV infections. As of January 2018, the IDOC's operative policy provided that all inmates with HCV were "eligible for consideration of treatment," but it prioritized those who suffered from an advanced infection. This policy incorporated the Federal Bureau of Prisons' HCV treatment guidelines. The IDOC also required its medical contractor, Wexford Health Services, to place $1.5 million in escrow annually for HCV treatment. But in practice, very few inmates received DAAs. As of January 2018, for example, only 1.2% of inmates who suffered from HCV in the last nine months had received DAAs. *See Stafford v. Carter*, No. 1:17-cv-00289-JMS-MJD, 2018 WL 4361639, at *15 (S.D. Ind. Sept. 13, 2018).

Given that lifesaving DAAs had been around for several years, a class of Indiana inmates with HCV infections filed a class action lawsuit in the Southern District of Indiana, *Stafford v. Carter,* in late January 2017. *See* Complaint, *Stafford*, 2018 WL 4361639. The inmates alleged that the IDOC acted with deliberate indifference in violation of the Eighth Amendment by failing to provide class members with DAAs. *See*

*Stafford*, 2018 WL 4361639, at *1. This *Stafford* litigation forms
the backdrop of Ms. Tackett's claim, so we review it briefly
below.

In September 2018, then-Chief Judge Magnus-Stinson is-
sued a summary judgment order in favor of the *Stafford* plain-
tiffs. She concluded that there was "no medical reason to di-
vide individuals by 'priority' or to ration the use of DAAs."
*Id.* at *20. The case proceeded to the remedies phase, with a
remedy hearing scheduled for late April 2019. In March 2019,
a month before the remedy hearing, the *Stafford* plaintiffs
sought a permanent injunction. In their motion, they asked
the court to require the IDOC to enact a policy that ensured
"all plaintiffs and class members who seek treatment with
DAAs are provided such treatment immediately; or … pursu-
ant to a timeline ordered by this Court." One month later, the
plaintiffs agreed to defer judgment on their request for a per-
manent injunction and filed a joint motion for a continuance
of the remedy hearing planned for late April 2019. The parties
reported that "discussions ha[d] progress[ed] to the point
where there [was] a reasonable chance of a negotiated resolu-
tion of the remaining issues," and a settlement conference was
therefore "in the best interests of the parties." Dr. Dauss, who
had assumed the position of Chief Medical Officer of the
IDOC on March 4, 2019, participated in these settlement ne-
gotiations.

The settlement negotiations were successful, and in Octo-
ber 2019, the parties filed a stipulation to enter a settlement
agreement. The stipulation explained that the settlement
agreement would require the IDOC to provide DAAs to in-
mates with the most severe HCV symptoms immediately,
those with intermediate symptoms by July 1, 2020, those with

less severe symptoms by July 1, 2022, and those with the least severe symptoms by July 1, 2023. On January 2, 2020, the district court approved the settlement agreement.

Unfortunately, the *Stafford* settlement did not save Mr. Tackett. As the *Stafford* litigation was taking place, Mr. Tackett was suffering from the effects of chronic HCV. Mr. Tackett started to seek treatment for HCV-related effects in May 2018 and continued to do so until his death in November 2019. On May 3, 2018, Mr. Tackett saw Kimberly Myers, a nurse at Wexford. Nurse Myers reported that Mr. Tackett's symptoms made him "near criteria" to receive DAAs. But she refused to submit him for treatment until his APRI (a test to assess hepatic fibrosis and cirrhosis) had a score of 2.0. At the time, the IDOC's HCV-management policy prioritized treatment for individuals with an APRI of at least 2.0, a liver biopsy that showed evidence of cirrhosis, or known or suspected cirrhosis. Two months later, on July 19, 2018, Mr. Tackett saw Dr. Carl Kuenzli. Dr. Kuenzli recorded Mr. Tackett's APRI score at 1.54. Three weeks later, on August 8, 2018, Mr. Tackett saw Nurse Myers again. He appeared gray in color and had an APRI of 1.5.

By 2019, Mr. Tackett still had not received DAAs, and his disease was progressing. On June 16, 2019, he saw a nurse at the prison and reported on June 29, 2019, that "[h]is legs were sore and swollen, his stomach hurt, and he was short of breath." At this point, the IDOC was still operating under a policy that prioritized the sickest patients for DAAs, rather than affording them to all HCV-positive inmates.

We pause to note that it is unclear from the record which policy governed Mr. Tackett's treatment during the summer of 2019. On March 1, 2019, just days before Dr. Dauss began

as Chief Medical Officer, the IDOC implemented a policy identical to the January 2018 policy that prioritized those with an advanced infection. In April 2019, one month after Dr. Dauss became Chief Medical Officer, she created a "working policy" that, as she described it, "provided additional clarity to the regional office[s] and their providers." We cannot determine from her description to what extent the April 2019 "working policy," as opposed to the March 2019 policy (that was identical to the January 2018 policy), informed Mr. Tackett's treatment. But that question does not impact our analysis because all policies established the same threshold for priority access as the Federal Bureau of Prison guidelines on which the policies were modeled. In other words, whether under the old or new, and official or "working" policies, the IDOC still only gave DAAs on a priority basis to the sickest patients.

A month later, on July 17, 2019, Mr. Tackett saw Nurse Myers again. She ordered an ultrasound of his liver and pancreas to assess for signs of cirrhosis. Shortly after that, on July 30, 2019, Nurse Myers observed that Mr. Tackett had indicators of cirrhosis, which made him eligible for priority treatment under IDOC policy (whichever version was in place). She requested that Mr. Tackett be considered for DAAs, but nothing came of that request. On July 31, 2019, Mr. Tackett submitted another request for healthcare in which he asked about starting DAAs. But he never received DAA treatment. He died on November 26, 2019, from burst esophageal varices, which is a complication of HCV cirrhosis.

In November 2021, Mr. Tackett's daughter Skyler, who is the representative of his estate, sued Wexford, Nurse Myers, Dr. Kuenzli, and Dr. Dauss (the latter three in their individual capacities). Ms. Tackett alleged that the defendants violated

the Eighth Amendment to the Constitution by acting with deliberate indifference to Mr. Tackett's serious medical needs. She also alleged a state medical malpractice claim against Wexford, Dr. Kuenzli, and Nurse Myers.

Ms. Tackett settled with Wexford, Dr. Kuenzli, and Nurse Myers, but continued to pursue her Eighth Amendment deliberate indifference claim against Dr. Dauss in her individual capacity. The parties filed cross motions for summary judgment, and the district court granted Dr. Dauss's motion. It determined that Dr. Dauss took "reasonable steps to expand access to DAAs to treat all prisoners with HCV" and Dr. Dauss was "not responsible for the medical providers' treatment decisions" that resulted in Mr. Tackett's death.

Ms. Tackett now appeals.

## II

We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *See Trahanas v. Northwestern Univ.*, 64 F.4th 842, 852 (7th Cir. 2023). "Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See id.* (internal quotations omitted). Whether someone acted with deliberate indifference is a "question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Rasho v. Jeffreys*, 22 F.4th 703, 709 (7th Cir. 2022) (internal citations omitted).

The Eighth Amendment's ban on cruel and unusual punishment makes a prison official liable for acting with deliberate indifference to an inmate's serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To determine if a prison

official was deliberately indifferent, we evaluate "whether a plaintiff suffered from an objectively serious medical condition" and "whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). "[M]edical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Rather, "the official must have actually known of and consciously disregarded a substantial risk of harm." *Rasho*, 22 F.4th at 710.

The parties agree that Mr. Tackett suffered from an objectively serious medical condition, so the only question before us is whether Dr. Dauss was deliberately indifferent to that medical condition.

Ms. Tackett sues Dr. Dauss in her individual capacity, so only her actions, not the actions of her predecessor, are at issue. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("[O]fficers sued in their personal capacity come to court as individuals."). Looking at Dr. Dauss's individual actions, we conclude that there is insufficient evidence for a jury to hold her liable for an Eighth Amendment violation.

Ms. Tackett argues that Dr. Dauss is liable because the policy under her watch of rationing DAAs based on the severity of an individual's HCV infection improperly deprived Mr. Tackett of lifesaving medication. But Mr. Tackett received preferential consideration for DAAs under this policy. It is undisputed that Mr. Tackett was in a treatment priority group as of July 2019, when Nurse Myers found evidence of cirrhosis. And it is further undisputed that Nurse Myers requested DAAs for Mr. Tackett pursuant to that policy. Ms. Tackett has

not provided any evidence demonstrating that the policy prevented Mr. Tackett from receiving the DAAs.

Mr. Tackett obviously should have been treated. It is a tragedy that he was not. But this case comes to us on summary judgment, "when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). And at this late stage, Ms. Tackett has produced no evidence that Dr. Dauss's actions led to Mr. Tackett's death. All Ms. Tackett has shown is that Dr. Dauss maintained a policy that prioritized DAAs for the sickest patients, of whom Mr. Tackett was one. She has not shown that any other action by Dr. Dauss impacted his care—Dr. Dauss was not personally involved in Mr. Tackett's treatment and the record did not show that Dr. Dauss was aware that he was not getting DAAs. An inmate with HCV who was not prioritized under the policy may have had a successful claim in this situation. But Ms. Tackett, on behalf of Mr. Tackett's estate, sues as an individual, and an individual plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *In re Jepson*, 816 F.3d 942, 946 (7th Cir. 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Ms. Tackett asks us to reach a different conclusion because, she contends, any IDOC policy that did not provide *all* inmates with HCV *immediate* access to DAAs is unconstitutional. We are unpersuaded for two reasons. First, it is unclear that the policy regulating the provision of DAAs caused Mr. Tackett's death. No evidence in the record suggests that whatever went wrong after Nurse Myers requested DAAs for Mr. Tackett in July 2019 (when he ostensibly was eligible for the

treatment based on the finding of cirrhosis) would have gone right under a different policy (under which he ostensibly would have been eligible for the treatment simply because all inmates were eligible). Second, the actions of the *Stafford* plaintiffs and Ms. Tackett's own counsel suggest that this position is not, and never was, realistic. Ms. Tackett's counsel also served as plaintiffs' counsel in *Stafford*. As previously noted, in March 2019, the *Stafford* plaintiffs, through plaintiffs' counsel, asked the district court to issue a permanent injunction requiring the IDOC to provide "all plaintiffs and class members" with DAAs "immediately; or … pursuant to a timeline ordered by this Court." But the *Stafford* plaintiffs, again through plaintiffs' counsel, subsequently delayed a ruling on that request and, in October 2019, approved a settlement that allowed the IDOC to roll out DAAs on a graduated timeline. This all occurred as Mr. Tackett was getting sicker and sicker. The *Stafford* plaintiffs' initial demand for an immediate or court-ordered timeline and later abandonment of that request in favor of a graduated timeline suggests that a policy ordering the immediate provision of DAAs when Dr. Dauss assumed her position in March 2019 was unreasonable. Therefore, we cannot accept the argument that failure to provide everyone DAAs immediately amounted to deliberate indifference.

Perhaps Dr. Dauss *could* have implemented a policy that would have resulted in Mr. Tackett receiving DAAs. She may have acted negligently or even committed malpractice by not doing so. But we have no evidence to conclude that she committed a constitutional violation as to Mr. Tackett specifically.

We regret Ms. Tackett's loss. Her father's death was preventable and senseless. We hope that the IDOC will honor its

commitment under *Stafford* to provide all HCV-positive individuals with DAAs so that this kind of tragedy will not happen again.

AFFIRMED.